DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Ida Ashford, Administratrix of the estate of Bryan Maurice Thompson, deceased, appeals the judgment of the Summit County Court of Common Pleas, which granted summary judgment in favor of appellees, Bayard Betleyoun and Summit Check Cashing, LLC. This Court affirms.
 I. {¶ 2} Appellant's decedent, Bryan Thompson ("Thompson"), conspired with another, Brian Davis, to rob Bayard Betleyoun ("Betleyoun"), a security guard for Summit Check Cashing, LLC ("SCC"). Thompson brought an air pistol with him to facilitate the robbery.
 {¶ 3} At the time of the attempted robbery, Betleyoun was a licensed armed security guard and was licensed to carry a firearm. During the course of the attempted robbery, Thompson waived his pistol in Betleyoun's face, and Betleyoun shot Thompson three times. A shot to Thompson's chest ultimately killed him.
 {¶ 4} On September 24, 2004, appellant filed a complaint, alleging that Betleyoun's negligent and careless shooting of Thompson resulted in Thompson's suffering and wrongful death, as well as loss of consortium for appellant. In addition, appellant alleged that SCC was liable to her for damages arising out of SCC's negligent hiring, screening, training and/or supervising of Betleyoun. Appellees answered, denying appellant's claims, asserting numerous affirmative defenses, and reserving the right to raise such further defenses as discovery might reveal as appropriate.
 {¶ 5} Appellees moved for summary judgment on appellant's claims, asserting that no genuine issue of material fact existed and appellees were entitled to judgment as a matter of law on the bases of Betleyoun's acting in self-defense and Thompson's primary assumption of the risk. Appellees attached various affidavits, deposition transcripts and the medical examiner's report in support of their motion. Appellant filed a response and memorandum in opposition to the motion for summary judgment.
 {¶ 6} On September 23, 2005, the trial court granted appellees' motion for summary judgment, finding that no liability attaches to Betleyoun by virtue of his affirmative defenses, to wit: self-defense and assumption of the risk. Appellant timely appeals, setting forth two assignments of error for review.
 II. ASSIGNMENT OF ERROR I
"IT IS A QUESTION FOR THE JURY TO DECIDE WHETHER A REASONABLE MAN, IN THE POSITION OF THE DEFENDANT, BAYARD BETLEYOUN JR., BELIEVED THAT SAID REASONABLE MAN WAS IN DANGER OF DEATH OR SERIOUS BODILY HARM AND COULD PREVENT THAT HARM ONLY BY THE IMMEDIATE USE OF DEADLY FORCE."
 {¶ 7} Appellant argues that the trial court erred by granting summary judgment in favor of appellees upon a finding that Betleyoun acted in self-defense when he shot and killed Thompson. This Court disagrees.
 {¶ 8} This Court reviews an award of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
 {¶ 9} Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 10} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. State ex rel. Zimmerman v.Tompkins (1996), 75 Ohio St.3d 447, 449.
 {¶ 11} The Ohio Supreme Court has recognized that "a defendant may be relieved of liability for tortious conduct by proving that such conduct was in self-defense." Goldfuss v.Davidson (1997), 79 Ohio St.3d 116, 124, citing 1 Restatement of the Law 2d (1965), Section 63 et seq. The Goldfuss court stated that
"[w]here a defendant has used deadly force, the defense of self-defense requires the defendant to prove that he reasonably believed that he was in danger of death or serious bodily harm and could prevent that harm only by the immediate use of deadly force." Goldfuss, 79 Ohio St.3d at 124, citing 1 Restatement of Torts, supra, Section 65(1).
 {¶ 12} Brian Davis testified at deposition that Thompson told him that they could rob a certain security guard, who would give them money. Davis testified that he agreed, because Thompson was going to bring a fake gun to the robbery. Davis testified that Thompson's fake gun looked like a real gun except that the hole in the barrel where a bullet would expel was too small. In response to counsel's question whether Thompson's gun looked real, Davis testified:
"Yeah. Only if you look at it like this, like a real gun. But if you point and see the barrel, you know it ain't no real gun."
 {¶ 13} Davis testified that he approached Betleyoun as he was attempting to exit his vehicle in SCC's parking lot. He testified that he pushed Betleyoun down and told him not to get out of the vehicle. Davis testified that Thompson came around him, waved the gun at Betleyoun at face level in an attempt to influence Betleyoun to give him some money, and said, "C'mon, give me the money. C'mon, hurry up."
 {¶ 14} Davis testified that he saw Betleyoun pull a gun from his jacket. He testified that he and Thompson both turned to run. Davis testified that he ran away, but Thompson's escape was blocked by Betleyoun's car door. Davis testified that he heard three gun shots in quick succession, with a one to two second delay between the first and second shots. Davis testified that, once he began to run away, he did not see what Thompson was doing. He testified that he did not know whether or not Thompson managed to take any steps away from Betleyoun's vehicle. He further testified that he did not see Thompson being shot.
 {¶ 15} Betleyoun attached both his deposition transcript and affidavit in support of his motion for summary judgment. He testified at deposition that he was a security guard, licensed to carry a firearm. He testified that he had just completed a private security firearms training program, conducted by Buckeye Firearms Training Center, on September 21, 2002, and attained successful requalification. Betleyoun attached a copy of the certificate from the Ohio Peace Officer Training Commission to his affidavit. He further testified that he had received deadly force training and that he understood that it is acceptable to discharge his weapon when there is a threat to himself or another person and that it is acceptable to use deadly force when he feels threatened.
 {¶ 16} Betleyoun averred in his affidavit that Thompson appeared at his vehicle doorway after Brian Davis pushed Betleyoun down into the seat. Betleyoun averred that he was in fear for his life when he saw the gun in Thompson's hand. He testified at deposition that Thompson pointed a gun at him and that he was scared for his life. Betleyoun averred that he shot Thompson to protect his life. He testified that Thompson did not turn his back on him and flee as Betleyoun fired his weapon. Rather, Betleyoun testified that Thompson kept his gun pointed at him. He testified that he shot Thompson three times, because Thompson continued to point his gun at Betleyoun the entire time. Betleyoun testified that the whole incident happened in a matter of seconds and that he reacted as soon as he saw Thompson wave the gun at him.
 {¶ 17} John C. Bell, a detective with the Akron Police Department, testified at deposition that he has participated in deadly force training as part of his annual police officer training every year for the past nineteen years. He further testified that he has been involved in several deadly force situations as a police officer.
 {¶ 18} Detective Bell testified that he investigated Betleyoun's use of deadly force in regard to the September 25, 2002 shooting of Thompson. He testified that he verified that Betleyoun was properly trained and authorized to carry a gun in connection with his job as a security guard. He testified that Betleyoun's statements regarding the incident were consistent with the medical examiner's report regarding the trajectories of the projectiles into Thompson's body. Specifically, Detective Bell testified that Thompson received two shots to his midsection and a third to his backside. The medical examiner's report of investigation listed Thompson's cause of death as a gunshot wound to the chest, the bullet having entered Thompson's chest and exited his back shoulder.
 {¶ 19} Detective Bell testified that he interviewed several witnesses and Betleyoun in regard to the incident. He testified that he saw the gun that Thompson had waved at Betleyoun and that it looked like a real high caliber handgun. He further testified that, based on his investigation, Betleyoun did nothing wrong. Detective Bell testified that Betleyoun acted appropriately in shooting Thompson three times, because Thompson was waving what looked like a real gun at Betleyoun; because Betleyoun was afraid that Thompson was going to shoot him; because Thompson presented a continuing threat to Betleyoun even after he had been shot; and because it is not unreasonable to fire two rounds in quick succession (a "tack-tack") to address a threat. Detective Bell further testified that Betleyoun acted properly in keeping his weapon drawn when Thompson fell after the third shot, because Thompson's gun remained in close proximity to his body; Brian Davis was still in the area; and it was unknown whether Davis was armed.
 {¶ 20} Finally, appellees provided an affidavit of Timothy A. Dimoff, founder and president of SACS Consulting Investigation Services, Inc. Mr. Dimoff attached his curriculum vitae and rendered an expert opinion after investigation regarding Betleyoun's use of deadly force in regard to Thompson's shooting. Mr. Dimoff concluded that Betleyoun was a properly trained and certified security guard at the time of the incident. He reported that the firearm brandished by Thompson appeared real to Betleyoun, to the police and to Dimoff. Mr. Dimoff further opined that Betleyoun was reasonable in his belief that Thompson's actions put him in fear of serious physical harm or death and that the use of deadly force was reasonable under the circumstances. Mr. Dimoff concluded that Betleyoun properly acted in self-defense.
 {¶ 21} Appellees have presented unrebutted evidence that Thompson waved what appeared, absent close scrutiny, to be a real gun at Betleyoun during the course of an attempted robbery and that Betleyoun reasonably believed that he was in danger of death or serious bodily harm. There was further unrebutted evidence that Betleyoun believed he could prevent such harm to himself only by the immediate use of deadly force. Betleyoun was trained in the acceptable use of a firearm and the use of deadly force. Both Detective Bell and Mr. Dimoff testified that, based on their respective experiences, Betleyoun was reasonable in his belief that Thompson brandished a real gun, that Betleyoun reasonably believed that he was in danger of death or serious bodily harm, and that Betleyoun's use of deadly force under the circumstances was reasonable.
 {¶ 22} There was unrebutted evidence that Thompson died as a result of the first gun shot to his chest and that such injury could only have been made while Thompson faced Betleyoun. Although Brian Davis testified that he saw Thompson turn as Betleyoun drew his gun, Davis testified that Thompson was prevented from running away because Betleyoun's car door prevented his escape. Davis further testified that, once he began running away from the scene of the attempted robbery, he did not see whether Thompson turned back towards Betleyoun. Davis testified that he did not see Thompson get shot, so he did not know whether Thompson was again facing Betleyoun. Betleyoun testified that he shot Thompson twice as Thompson pointed his gun at him, and the medical examiner's report confirms two shots to the front of Thompson's body. Betleyoun testified that he shot Thompson a third time as he fled, but that Thompson continued to point his gun in Betleyoun's direction. Detective Bell testified that it is reasonable to use deadly force as long as the threat continues. Accordingly, appellees have met their burden of demonstrating that Betleyoun acted in self-defense when he shot and killed Thompson under these circumstances. Betleyoun's conduct in self-defense further relieved him from liability for his otherwise tortious conduct.
 {¶ 23} Appellant, on the other hand, has failed to meet her reciprocal burden of demonstrating that Betleyoun could not have reasonably believed that Thompson presented a danger of death or serious bodily harm to him. Zimmerman, 75 Ohio St.3d at 449. Brian Davis conceded that Thompson's air pistol looked like a real gun. He further conceded that he did not see Thompson when Thompson was shot and could not, therefore, know whether Thompson had again turned to face Betleyoun.
 {¶ 24} Under these circumstances, this Court finds that the trial court did not err when it found that no genuine issue of material fact exists regarding Betleyoun's use of self-defense and whether he was justified in using deadly force against Thompson. Further, the trial court did not err when it found that Betleyoun's actions in self-defense relieved him of liability. As no genuine issue of material fact exists, this Court finds that the trial court did not err in finding that appellees were entitled to judgment as a matter of law in regard to appellant's claims. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"DEFENDANT [BETLEYOUN'S] DEFENSE OF ASSUMPTION OF THE RISK IS NOT A COMPLETE BAR TO PLAINTIFF'S RECOVERY, FOR THE REASON THAT DEFENDANT [BETLEYOUN] OWES A DUTY TO USE FORCE THAT WAS REASONABLE AND NECESSARY TO REPEL AND PREVENT THE FELONY WHICH DECEDENT, BRYAN THOMPSON WAS ATTEMPTING TO COMMIT."
 {¶ 25} Because this Court's decision regarding the first assignment of error is dispositive, we decline to address appellant's second assignment of error.
 III. {¶ 26} Appellant's first assignment of error is overruled. This Court declines to address the second assignment of error. The judgment of the Summit County Court of Common Pleas, which granted summary judgment in favor of appellees, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Whitmore, P.J. Moore, J. concur.